UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LAURALEE K. BELL, not individually but as TRUSTEE OF THE LAURELEE K. BELL 1993 TRUST, | ) ) ) | |
| | ) | No. 12 C 8311 |
| Appellant, | ) ) | |
| v. | ) ) | Judge Thomas M. Durkin |
| PHILLIP E. RUBEN, | ) ) | |
| Appellee. | ) | |

## MEMORANDUM OPINION AND ORDER[1]

This case is an appeal from a U.S. Bankruptcy Court decision granting summary judgment in favor of Phillip E. Ruben and against Lauralee K. Bell as Trustee of the Laureelee K. Bell 1993 Trust ("Bell" and "the Trust"). Bell contends that the bankruptcy court improperly granted summary judgment in favor of Ruben and that summary judgment should have been granted in her favor. For the reasons that follow, the decision of the bankruptcy court is affirmed in part, and reversed in part.

## BACKGROUND

The parties generally agree on the underlying facts; this case arises out of the management of Bell's Trust. Bell filed suit in the Circuit Court of Cook County,

---

[1] The Court has consolidated the Record on Appeal (ROA), Docket No. 1, into one PDF document, which consists of 1940 pages. The Court's citations to the ROA are "ROA at ___." All other citations are to the document's docket number, as "R. ___."

Illinois, Case No. 08 L 011554, against Ruben, his former law firm Levenfeld Pearlstein, LLC ("Levenfeld"), and numerous others. ROA at 338 ¶ 8.[2] She alleged that those defendants wrongfully took $30 million from her. ROA at 338 ¶ 8. Eight of the thirteen counts in the complaint were directed at Ruben, and others. R. 2-3 at 5. Count I was for fraudulent misrepresentation; Count II was for fraudulent concealment; Count III was for unjust enrichment based on negligent misrepresentation; Count VII sought the imposition of a constructive trust; Count X was for legal malpractice; and Counts XI, XII, and XIII sought damages for breaches of fiduciary duty and civil conspiracy and an accounting. R. 2-3 at 5-6.

Ruben and his former law firm moved on two occasions to compel Bell to submit her claims to arbitration. ROA at 338 ¶ 9. On December 7, 2009, Bell agreed to arbitrate her claims before the American Arbitration Association ("AAA"), pursuant to its applicable rules and procedures for commercial arbitration. ROA at 338 ¶ 10; R. 2-3 at 6.

On April 6, 2010, Ruben filed for Chapter 7 Bankruptcy in the U.S. Bankruptcy Court for the Northern District of Illinois, Case No. 10-bk-15179. ROA at 338 ¶ 11. Two months later, on June 2, 2010, Bell initiated arbitration proceedings against Levenfeld and its individual attorneys (the "Arbitration") but did not include Ruben because of his bankruptcy filing, choosing instead to pursue her claims against Ruben in the bankruptcy court. ROA at 338-39 ¶¶ 11-12. Bell subsequently filed a Proof of Claim regarding Ruben on July 14, 2010, and "the

---

[2] ROA pages 336 to 354 are "Defendant's Response to Plaintiff's Rule 7056 Statement of Undisputed Material Facts."

Adversary Complaint to Determine Dischargeability of [Ruben's] Debt" on July 21, 2010 (the "Adversary Proceeding," case number 10 A 1514). ROA at 339 ¶ 12.

On September 28, 2010, a general discharge order was entered in the bankruptcy case; this occurred before Ruben answered the Adversary Complaint. ROA at 339 ¶ 13. The bankruptcy case was closed two days later on September 30. ROA at 339 ¶ 14.

The Adversary Proceeding against Ruben and the Arbitration involved the same evidence and essentially the same claims. ROA at 339 ¶ 15. Accordingly, on December 30, 2010, Ruben filed a motion to stay the Adversary Proceeding, so he could join and participate in the pending Arbitration because litigating the issues separately "would have been piecemeal, duplicative, and inefficient," as well as would "have put the parties at risk of inconsistent rulings and findings." ROA at 339 ¶ 15. In response, on January 5, 2011, Bell filed a motion to amend before the Arbitration Panel (the "Panel") to add Ruben as a respondent in the Arbitration. ROA at 340 ¶¶ 16-17. The Panel granted the motion to amend on January 10, 2011, and Ruben formally joined the Arbitration as a respondent. ROA at 340 ¶ 19.

On February 24, 2011, the bankruptcy court entered an agreed order which stayed the Adversary Proceeding "until the completion of the Arbitration Proceeding or until further order of this Court." ROA at 340 ¶ 20. The Arbitration carried on.

On October 18, 2011, Bell settled her claims against two of the respondents in the Arbitration. ROA at 340 ¶ 21. "The parties to that agreement agreed to bear their own costs and expenses relating to the Arbitration." ROA at 340 ¶ 21. The

3

remaining parties, including Ruben, proceeded to a hearing before the Panel. That hearing took place from October 31 to November 17, 2011, with Ruben testifying on October 31, November 1, and November 2. ROA at 340 ¶ 22.

On February 1, 2012, Bell settled all of her claims against the other two remaining respondents in the Arbitration, the law firm and Gary Blackman, who also agreed to bear their own costs and expenses resulting from the Arbitration. ROA at 341 ¶ 23. Additionally, pursuant to that settlement agreement, Bell agreed to dismiss with prejudice certain counts against Ruben: Counts III (negligent misrepresentation), IV (unjust enrichment), V (constructive trust), VI (legal malpractice), VII (breach of fiduciary duty), and XI (accounting). ROA at 341 ¶ 23. On February 10, 2012, the law firm and Blackman were dismissed with prejudice from the Arbitration, as well as the aforementioned claims against Ruben. ROA at 341 ¶ 24. Ruben became the only remaining respondent in the Arbitration. ROA at 341 ¶ 25. And the only claims remaining, and thus the only claims submitted to the Panel for judgment, were those against Ruben based on fraud, fraudulent concealment, and civil conspiracy. ROA at 341 ¶ 26, 353-54 ¶ 30; R. 2 at 11.

The Panel issued its decision on March 5, 2012. R. 2-1. The decision included the following language which is relevant to this appeal:

> After application of all setoffs to which Respondent Philip E. Ruben is legally entitled and after consideration of the claims against Respondent Ruben that have been dismissed by Claimant and that remain pending for award, Claimant's damages proven to be attributable to the actions of Respondent Philip E. Ruben have been compensated and therefore Claimant shall take nothing against Respondent Philip E. Ruben on her remaining claims.

4

The administrative fees and expenses of the American Arbitration Association that were advanced by Claimant totaling $21,200.00 and the compensation and expenses of the arbitrators that were advanced by Claimant totaling $150,304.54 shall be borne by Respondent Philip E. Ruben. The administrative fees and expenses of the American Arbitration Association that previously were advanced by Respondents jointly and severally and the compensation and expenses of the arbitrators that previously were advanced by Respondents jointly and severally shall be borne by Respondents as advanced. Respondent Philip E. Ruben therefore shall reimburse Claimant the sum of $171,504.54, representing that portion of said fees and expenses in excess of the apportioned costs previously incurred by Claimant.

The above sums are to be paid on or before 30 days from the date of this Award. Interest thereafter shall accrue on all unpaid amounts awarded herein above at the maximum post-judgment interest rate applicable to judgments for tort damages, if any, permitted under Illinois law.

R. 2-1 at 2. The Panel also stated, "All claims not expressly granted herein are hereby, denied." R. 2-1 at 2. The parties agree that the Panel had the authority to apportion fees and expenses pursuant to then-AAA Rule No. R-50, which was in effect at the time. ROA at 206 ¶ 20; R. 2 at 8. Rule No. R-50 provided that "expenses, including required travel or other expenses of the arbitrator or AAA representatives 'shall be borne equally by the parties, unless they agree otherwise or unless the arbitrator in the award assesses such expenses or any part thereof against any specified party or parties.'" ROA at 206-07 ¶ 20 (quoting AAA Commercial Arbitration Rule R-50, *available at* http://www.adr.org/aaa/faces/rules).[3]

---

[3] The Court notes that "Commercial Arbitration Rules and Mediation Procedures (Including Procedures for Large, Complex Commercial Disputes)" were amended on the website as of October 1, 2013. Any changes are inconsequential to the issues presently before the Court, as the language of then-Rule No. R-50 controls.

Bell and Ruben returned to the bankruptcy court to continue with the Adversary Proceeding in light of the Panel's ruling. ROA at 6. The only money at issue was the $171,504.54 "fees and expenses" awarded to Bell in the Panel's decision (the "Award"). R. 2-1 at 2. Bell sought to enforce the Award; Ruben sought to discharge it.

On July 3, 2012, Bell filed an Amended Complaint in the Adversary Proceeding. ROA at 26-90. Counts I, II, and III of Bell's Amended Complaint seek judgment in Bell's favor on the Award because the Award is exempt from the September 28, 2010 discharge order pursuant to 11 U.S.C. § 523(a)(2), (4), and (6).[4] ROA at 83-85. Count IV is a Declaratory Judgment that the Award "is a post-petition, post-discharge obligation of Phil Ruben that is not discharged by virtue of his prior Chapter 7 Bankruptcy Case[.]" ROA at 85-89.

After Bell filed her Amended Complaint, the parties each filed motions for summary judgment. ROA at 7, No. 53; No. 59. Bell first argued summary judgment should be granted in her favor on Count IV because Ruben engaged in "post-petition ancillary litigation (the Arbitration)," so the Award is not subject to the prior discharge order. ROA at 184-89. If the bankruptcy court made that determination,

---

[4] The Amended Complaint actually requested damages in excess of $30 million on Counts I, II, and III, but the parties conceded that collateral estoppel or issue preclusion applied to the damage amount based on the Panel's decision. Therefore, the only amount at issue was the $171,404.54, plus interest. *See* ROA at 210-11 ("Even Bell, in her Earlier Motion, conceded that the most she could possibly collect against Ruben in this [A]dversary [P]roceeding was the Expense award for $171,504.54."); *see also* R. 2 at 17 (only asking this Court in her (Bell's) opening brief to require Ruben to pay her "the fees and costs that the Panel ordered him to pay").

Counts I, II, and III of her Amended Complaint would be mooted. ROA at 185. Alternatively, if the bankruptcy court determined the Award was a pre-petition obligation, Bell argued she was entitled to summary judgment on Counts I, II, and III because debts related to fraud and intentional conduct are not dischargeable. *See* 11 U.S.C. §§ 523(a)(2), (4) & (6). Bell also argued, without citing to any case or statutory law, that Ruben should not be put in a better position than if the fraud claims had originally been litigated in the Adversary Proceeding. ROA at 194-95. Conversely, Ruben argued, first, that the "shall take nothing" language of the Panel's opinion demonstrated that Ruben was not liable on the fraud claims; therefore, because collateral estoppel applied, that decision precluded any judgment in Bell's favor on Counts I, II, and III. ROA at 209-11. Ruben's second argument was that the case *In re Kirkpatrick*, 216 B.R. 663, 666 (Bankr. M.D. Fla. 1997), mandated a finding that the Award constituted pre-petition debt, and thus, Count IV had to fail. ROA 211-12.

The parties appeared before the bankruptcy court on August 30, 2012. R. 2-3 at 1. Instead of issuing a written memorandum on the summary judgment motions, the bankruptcy court gave an oral ruling. R. 2-3 at 1-34. The court began by detailing the factual background and procedural posture of the case. R. 2-3 at 4-12. Next, the court discussed its interpretation of the language of the Panel's decision. The court explained:

> In other words, the Panel had already dismissed Bell's non-fraud claims against Ruben with prejudice, and then after considering the evidence presented at the hearing, denied all the other claims against him. The Panel entered an award finally determining that Ruben is

not liable to Bell for the asserted fraud claims; i.e., *there are no damages for fraud for which Ruben is liable.*

R. 2-3 at 12-13 (emphasis added). The court then concluded that collateral estoppel applied under Illinois and federal law to the issues litigated in the Arbitration—i.e., "whether Ruben owe[d] Bell a debt based on fraud." R. 2-3 at 14-17. Accordingly, because the court interpreted the Panel's opinion as concluding that "Bell lost on all of her fraud claims against Ruben," the court determined that "Bell [could not] meet her burden of proving that Ruben owes a debt obtained by fraud as required for her claim under Section 523(a)(2)(A) in Count I of the [A]dversary complaint." R. 2-3 at 17-18. And thus, "because there [was] no basis for a finding of dischargeability based on fraud or any other ground cognizable under Section 523(a), there [was] no basis for finding that the award of administrative fees and costs [was] nondischargeable either." R. 2-3 at 19.

The bankruptcy court then addressed Bell's alternative argument in Count IV, "that the fee reimbursement obligation is a post-petition debt not discharged under Section 727(a) because it was entered in the arbitration brought after the petition date." R. 2-3 at 22. In rejecting that argument, the judge distinguished Bell's cited cases, including *In re Hadden*, 57 B.R. 187 (W.D. Wis. 1986), and stated that none of the cases Bell highlighted "provide[d] any basis for concluding that [Ruben] took on a post-petition debt that was not discharged by agreeing to participate in the arbitration of the pre-petition claims brought against him." R. 2-3 at 25. The court also explained that Bell did not present anything "to show that Ruben took on any affirmative contractual obligation to pay arbitration expenses"

8

after the discharge petition. R. 2-3 at 25-26. The court then concluded that "the fee reimbursement obligation is not a post-petition debt. It is a pre-petition debt covered by the scope of the discharge in Section 727(a) and is not exempted from discharge." R. 2-3 at 28.

With those determinations in place, the bankruptcy court held that Bell could not succeed on Counts I, II, and III, as the Arbitration fees and expenses awarded are dischargeable debts not based in fraud, so Ruben was entitled to summary judgment on those claims. R. 2-3 at 30-33. The court similarly concluded that Ruben was entitled to summary judgment on Count IV because "Bell failed to establish that the fee award is a post-petition debt." R. 2-3 at 33-34. Summary judgment was thus entered in favor of Ruben on all of Bell's claims in the Adversary Proceeding. R. 2-3 at 34.

## LEGAL STANDARDS

The issue on appeal is whether the bankruptcy court properly granted summary judgment in favor of Ruben. This Court reviews a bankruptcy court's findings of fact for clear error and its conclusions of law de novo. *Monarch Air Serv. v. Solow*, 383 F.3d 663, 668 (7th Cir. 2004). Summary judgment under Federal Rule of Civil Procedure 56 is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To defeat summary judgment, the non-moving party must produce more than a "mere scintilla of evidence," meaning "evidence on which [a] jury could

reasonably find for the non-moving party." *Harris N.A. v. Hershey*, 711 F.3d 794, 798 (2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). The Court considers the entire evidentiary record and "view[s] all facts and draw[s] all inferences in the light most favorable to the non-moving party" when ruling on the motion. *Ball v. Kotter*, 723 F.3d 813, 821 (7th Cir. 2013); *Egan Marine Corp. v. Great Am. Ins. Co.*, 665 F.3d 800, 811 (7th Cir. 2011). And on appeal, "[s]ummary judgment may be affirmed on any ground supported by the record, even if it was not relied upon by the court below." *Monarch Air Serv.*, 383 F.3d at 668.

## DISCUSSION

The determination of whether the bankruptcy court properly granted summary judgment in favor of Ruben rests on the same two questions before the bankruptcy court: (1) whether the Award relates to non-dischargeable fraud by Ruben, *see* 11 U.S.C. §§ 523(a)(2), (4), & (6); R. 2 at 1; and if not, (2) whether the Award is a post-petition obligation that is not subject to the September 11, 2010 discharge order. The first question relates to Counts I, II, and III; the second question to Count IV.

## I.    Counts I, II & III

### A. Non-Dischargeable Fraud

The parties quarrel over the particular language the Panel used and whether the Award was imposed because the Panel found Ruben liable on the fraud claims before it. The Panel explained:

> After application of all setoffs to which Respondent Philip E. Ruben is legally entitled and after consideration of the claims against

Respondent Ruben that have been dismissed by Claimant and that remain pending for award, *Claimant's damages proven to be attributable to the actions of Respondent Philip E. Ruben have been compensated* and therefore Claimant *shall take nothing* against Respondent Philip E. Ruben on her remaining claims.

R. 2-1 at 2 (emphasis added). Ruben contends the "shall take nothing" language indicates that the Panel found in favor of Ruben and against Bell on the remaining claims before the Panel, R. 7 at 16-20, which the parties agree were all based in fraud. ROA at 341 ¶ 26. The bankruptcy court agreed with this assessment and granted summary judgment in favor of Ruben on Counts I, II, and III, accordingly. R. 2-3 at 12-13, 30-32. Conversely, Bell contends the Award demonstrates that she was entitled to damages as a result of Ruben's conduct, and because the only claims remaining before the Panel were fraud-based claims, the Award must have been imposed as a result of fraudulent conduct.[5]

Despite these contentions, however, the Court does not need to consider the particular findings the Panel made regarding Ruben's liability, on the fraud claims or otherwise. Initially, the Panel was clear that Bell "shall take nothing against [Ruben] on her remaining claims." R. 2-1 at 2. That included the fraud claims. Next, the Panel discussed the fees and expenses award in an entirely separate paragraph—*after* the Panel concluded Bell would receive nothing on her remaining claims, and *after* the Panel concluded that any damages attributable to Ruben "have

---

[5] Bell spends time discussing what she considers to be "overwhelming" evidence of fraud by Ruben. R. 2 at 12. None of that information is relevant here, however, because of the res judicata effect of the Panel's decision. All that matters is what the Panel decided, not what evidence was presented to the Panel. *See* R. 2-3 at 14-17.

been compensated." Taken together, this information demonstrates the Award cannot be construed to have resulted from any of the underlying claims against Ruben. The Award is completely separate from the Panel's findings on liability and only the result of the parties' unrelated agreement to have the Panel decide the case (which vested the Panel with unlimited authority when apportioning and assigning fees and expenses under then-AAA Rule No. R-50). ROA at 206 ¶ 20. Ruben previously conceded this when he argued that the Panel "separately" awarded Bell "administrative fees and expenses" against him, ROA at 206 ¶ 19, and no compelling argument has been made by either party that would cut against this conclusion.

## B. Summary Judgment

Moving to the bankruptcy court's grant of summary judgment in favor of Ruben on Counts I, II, and III, the Court's determination in Section I.A. is at odds with the bankruptcy court's conclusion. Nonetheless, the Court agrees that summary judgment in favor of Ruben on those counts is proper.[6]

---

[6] The bankruptcy court granted Ruben's motion for summary judgment on Counts I, II, and III because it interpreted the Panel's opinion as concluding that "Bell lost on all of her fraud claims against Ruben." R. 2-3 at 12-13, 17-18. The Court does not agree with this assessment; the Panel only said that any damages "have been compensated." R. 2-1 at 2. Nonetheless, this error has no bearing on the Court's conclusion here because of its ultimate determination that the Award is unrelated to Ruben's liability on any of the underlying claims. *See Hester v. Ind. State Dep't of Health*, 726 F.3d 942, 946 (7th Cir. 2013) ("[A]n appellate court can affirm the district court's dismissal based on any ground supported by the record, even if different from the grounds relied upon by the district court." (quoting *Stanley v. The Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001))).

11 U.S.C. §§ 523(a)(2), (4), and (6) are exceptions to debt that may be discharged pursuant to the Bankruptcy Code. In Bell's Amended Complaint, she alleges that the Award falls within the confines of those discharge exceptions. Count I requires Bell to demonstrate that Ruben's debt was obtained by "false pretenses, a false representation, or actual fraud," or the "use of a statement in writing that is materially false." *See* 11 U.S.C. 523(a)(2). As discussed, however, the Award had nothing to do with the Panel's findings regarding Ruben's liability on the underlying claims. Accordingly, because there is no genuine issue of material fact that the Award was not obtained by any of the means discussed in Section 523(a)(2), Count I necessarily fails.

Counts II and III are similar to Count I. Count II requires Bell to demonstrate Ruben obtained the debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny," *see* § 523(a)(4); while Count III requires Bell to establish Ruben obtained the debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." *See* § 523(a)(6). Bell argues that she "properly pled these causes of action in her Amended Complaint" and never had "an opportunity to satisfy her burden of proof in connection therewith." R. 2 at 15. The case is not at the motion to dismiss stage, however, so whether Bell's Amended Complaint was adequately pled is not at issue. Furthermore, Ruben filed his motion for summary judgment and contended that he was entitled to judgment as a matter of law because "Bell fully and fairly litigated her claims—the exact same claims she asserts in this [A]dversary proceeding—to a

conclusion on the merits." ROA at 202. That put Bell on full notice that she had to put forth some evidence contesting Ruben's motion for summary judgment. Her failure to do so then does not require an additional opportunity to do so now.

But in any event, the Award was not based on Bell's underlying claims, *see* § I.A., and the record is devoid of any evidence demonstrating the Panel's imposition of fees and expenses against Ruben was the result of any fraudulent or intentional conduct outside the realm of the underlying claims. Thus, for the reasons Count I fails, Counts II and III fail as well. It follows that the bankruptcy court properly granted summary judgment in favor of Ruben and against Bell on Counts I, II, and III of Bell's Amended Complaint.

## II.  Count IV

Neither party disputes the validity of Ruben's September 11, 2010 discharge order. However, because the Award was not included in Ruben's discharge order, it is not automatically discharged even if unrelated to the fraudulent conduct alleged. The Court must therefore determine whether the Award constitutes pre- or post-petition debt, *see* 11 U.S.C. § 727(b), before it may decide whether the bankruptcy court properly granted summary judgment in favor of Ruben on Count IV.

### A.  Pre- or Post-Petition Debt

The Bankruptcy Code "discharges the debtor from all debts that arose before the date of the order for relief under this chapter." § 727(b). The purpose of the Code is to permit a debtor "to start afresh free from the obligations and responsibilities consequent upon business misfortunes." *Vill. San Jose v. McWilliams*, 284 F.3d 785,

790 (7th Cir. 2002) (quoting *Williams v. United States Fid. & Guar. Co.*, 236 U.S. 554-55 (1915)) (internal quotation marks omitted). Accordingly, the Code is to be construed strictly against a creditor and liberally in favor of the debtor. *Stamat v. Neary*, 635 F.3d 974, 979 (7th Cir. 2011).

Bell contends that the bankruptcy court improperly granted summary judgment in Ruben's favor on Count IV after erroneously concluding that the "fee reimbursement obligation arose from Bell's claim based on Ruben's alleged pre-petition conduct and her pre-petition lawsuit against [Ruben] for that very conduct . . . [and], therefore, [it was] a pre-petition debt covered by the discharge." R. 2 at 5-9; R. 2-3 at 22-23. In other words, if the Court here concludes that the Award is a post-petition obligation, Section 727(b) does not apply, and Bell would be entitled to summary judgment in her favor. *See Kirkpatrick*, 216 B.R. at 665 ("If the debt is a post-petition debt, there is no question of dischargeability because a discharge merely absolves a debtor of pre-petition debts and renders such pre-petition debts unenforceable. A discharge has no effect on a debtor's post-petition debt."); *In re Hadden*, 57 B.R. 187, 188 (Bankr. W.D. Wis. 1986) ("To the extent that the fees arose after the debtor filed for bankruptcy, they constitute a nondischargeable post-petition debt."). If the Award constitutes pre-petition debt, however, it is discharged pursuant to the discharge order and summary judgment in favor of Ruben is required. R. 7 at 11-15.

The case law surrounding the pre-petition versus post-petition issue here is sparse, and the parties have not directed the Court to a controlling Seventh Circuit

case. Nonetheless, certain governing principles can be extracted from the cases dealing with somewhat similar issues. The *Hadden* court explained,

> [T]he court [in *In re Thomas*, 12 B.R. 432 (Bankr. S.D. Iowa 1981)] drew a distinction between pre-bankruptcy acts the costs of which continue to accrue after filing and costs which the debtor incurs for post-bankruptcy acts. Using this rationale, the dischargeability of [the creditor's] claim depends upon the 'operative facts giving rise to the obligation.' . . . The implication of *Thomas* is that bankruptcy was intended to protect the debtor from the continuing costs of pre-bankruptcy acts but not to insulate the debtor from the costs of post-bankruptcy acts.

*Hadden*, 57 B.R. at 189-90. Another court has held that "[t]he issue of whether an obligation must be designated as a pre-petition or post-petition claim does not depend on when the damages from the harm accrued. Rather, the issue is when the cause of action arose." *In re Gullone*, 301 B.R. 683, 687 (Bankr. D. N.J. 2003). When the issue relates to post-discharge litigation, "the issue . . . is whether the Debtor[] took sufficient affirmative action post-petition, or otherwise 'returned to the fray,' that warrants imposing personal liability for the post-petition fees and costs awarded." *In re Clarkson*, 377 B.R. 283, 289 (Bankr. W.D. Wash. 2007) (citing *Boeing N. Am., Inc. v. Ybarra*, 424 F.3d 1018, 1026-27 (9th Cir. 2005)).

The parties do not dispute the timing of when Ruben joined the pending Arbitration or when the Panel released its decision and imposed the Award against Ruben. These events occurred *after* the discharge. R. 2-3 at 22. The bankruptcy court noted that fact in the oral decision. R. 2-3 at 22. Nonetheless, that alone does not control the determination of whether a debt is a pre- or post-petition obligation. *See Gullone*, 301 B.R. at 687 (explaining that the issue "does not depend on when

the damages from the harm arose"). Here, the bankruptcy court concluded that the Award is a pre-petition obligation because it "arose from Bell's claim based on Ruben's alleged pre-petition conduct and her pre-petition lawsuit against him for that very conduct." R. 2-3 at 22-23. In doing so, the court likened this case to the line of cases involving attorney fees which observed that "but for the debtor filing [the] suit, which happened to be pre-petition, no attorney's fee award would have been made." R. 2-3 at 23 (quoting *Gullone*, 301 B.R. at 687) (citing *In re Matthews*, 458 B.R. 623, 626 (Bankr. N.D. Ga. 2011); *Kirkpatrick*, 216 B.R. at 665-66). However, despite the bankruptcy court's conclusion that "[Ruben] was merely defending against pre-petition claims brought by Bell," R. 2-3 at 24, Ruben has not put forth anything indicating that he was *required* or that it was *essential* for him to defend the claims in the Arbitration, as opposed to in the bankruptcy court.[7]

The *Hadden* case, which is the only case in this circuit that the parties have cited, is instructive on this point. The case involved a debtor who sued a construction company (the creditor) in state court for breach of contract; the creditor

---

[7] Ruben made a brief statement in a footnote in his summary judgment motion that the bankruptcy court "was *arguably* precluded from rending judgment on Bell's claims." ROA at 209 n.4 (emphasis added). Ruben has undermined that argument by consistently acknowledging that he wanted the case to go to Arbitration *after* the discharge. *See, e.g.*, R. 7 at 13. Additionally, the cases he cites in the footnote only say that arbitration agreements are generally enforceable; they do not say anything that might suggest Ruben had a valid arbitration agreement with Bell at the time the underlying claims arose. *Id.* Whether there was a valid arbitration agreement has not been at issue, and now is not the time to resurrect underdeveloped arguments. *See United States v. Hassebrock*, 663 F.3d 906, 914 (7th Cir. 2011) (explaining that "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived" (quoting *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991))).

in turn filed a counterclaim for attorney fees pursuant to the contract. 57 B.R. at 188. The debtor subsequently filed for relief under Chapter 7 of the Bankruptcy Code, which was granted several months later. *Id.* Then, after the debtor's discharge order, a trial on the breach of contract claim was held, and the state court dismissed the debtor's cause of action and entered judgment in favor of the creditor company on its counter claim for attorney fees. *Id.* The debtor filed an amendment to his Chapter 7 petition, listing the attorney fee award as an unsecured claim. *Id.* The creditor company disputed the characterization of the attorney fee award as "pre-petition," so the issue before the bankruptcy court was "whether the debtor's voluntary continuation of pending litigation after his filing for bankruptcy created a nondischargeable post-petition debt." *Id.*

In concluding that the attorney fee award was a post-petition debt, the *Hadden* court focused on the "operative facts giving rise to the obligation." *Id.* at 190. The debtor argued that "the claim for attorney's fees [arose] at the time of contract and [was] consequently a dischargeable pre-petition debt," which was somewhat true—the original claim for attorney fees was made before the discharge. *Id.* Nevertheless, the court distinguished between costs after discharge that are "truly ancillary in nature" to the claims before discharge and those that are not. *Id.* The court, citing *In re Chambers*, 36 B.R. 42, 46 (Bankr. W.D. Wis. 1984), held that the "debtor 'resurrected' the contract after discharge and reaffirmed his obligation to pay damages if he lost." *Id.* The post-discharge litigation costs that were awarded to the creditor company were not sufficiently related to the pre-discharge claims

because the debtor *chose* to pursue the claims and voluntarily continued to do so *after* the discharge. *Id.* The court acknowledged that it was a "unique" case, *id.*, but at least one court reaching a contradictory conclusion has acknowledged "the articulation of the equities" explained by the court "is sound." *See Gullone*, 301 B.R. at 688.

*In re Sure-Snap Corp.* 983 F.2d 1015 (11th Cir. 1993) is also instructive here. Sure-Snap, a Chapter 11 debtor, sought a declaration that its obligation under a mortgage and security agreement was void under Vermont law. *Id.* at 1017. While the declaration was pending, Sure-Snap filed a Chapter 11 plan of reorganization. *Id.* The bankruptcy court eventually upheld the agreement, and eight days later, confirmed Sure-Snap's plan. *Id.* Sure-Snap's obligations were thus discharged. *Id.* After the discharge order, however, Sure-Snap made the affirmative decision to appeal the validity of the declaration and lost. *Id.* Accordingly, the creditor, as the prevailing party, sought and obtained an award for the appellate attorney fees and costs. *Id.*

Sure-Snap, like the debtor in *Hadden*, argued the attorney fees were a pre-petition debt. *Id.* at 1017-19. The Eleventh Circuit disagreed with Sure-Snap's characterization. *Id.* The court explained,

> The attorney fees [the creditor] seeks were incurred by [the creditor] in defending a *post-confirmation* appeal initiated by Sure-Snap. Sure-Snap voluntarily continued to litigate the validity of the Agreement after confirmation of its Chapter 11 plan. . . . By choosing to appeal the validity of the Agreement after confirmation, Sure-Snap did so at the risk of incurring post-confirmation costs involved in its acts.

*Id.* at 1018 (emphasis in original). The court's focus was on which party chose to engage in the post-discharge conduct and whether that decision was voluntary. *See id.* at 1017-19.

Applying these principles to the case at hand, the Court cannot agree with the bankruptcy court's conclusion that the Award is a pre-petition debt. The focus here is on what particular conduct caused the Arbitration fees—i.e., the underlying claims against Ruben or Ruben's voluntary and conscious choice to join the Arbitration after his discharge petition. Ruben argues the former, stating that "the underlying conduct that allegedly gave rise to Bell's claims in the [A]rbitration and [A]dversary case occurred several years before Ruben filed and obtained his discharge in bankruptcy." R. 7 at 14. However, as discussed above, the fees were not awarded on the basis of fraud or any underlying claim, which Ruben agrees with. ROA at 207 ¶ 21 (stating that "the Panel's award of expenses did not in any way relate to [Bell's] remaining substantive claims against Ruben"); R. 7 at 19 ("The Fee Award was not tied to, derivative of, or related to Bell's fraud claims."). The Panel imposed them because the parties agreed to pay for the Arbitration by consenting to the AAA Rules. ROA at 206-07 ¶ 20; R. 2-1 at 2.[8]

---

[8] The bankruptcy court stated that "Bell has presented nothing to show that Ruben took on any affirmative contractual obligation to pay arbitration expenses." R. 2-3 at 25. It is true that the record does not contain a contract that the parties signed, but Ruben has explicitly acknowledged that the Panel had the authority to apportion fees to the parties. ROA at 206 ¶ 20. He cannot now argue that the Panel had the authority to apportion fees against him, yet he was somehow exempt from having to pay them (bankruptcy discharge aside). *See* R. 7 at 19 ("Rather, when it came to fees, [the Panel's] authority was uninhibited and unlimited.").

Furthermore, there is nothing indicating that the parties were *required* to litigate the claims against Ruben in the Arbitration or that they could not have litigated them in the bankruptcy court. *See* § II.A. n.7. Rather, Ruben concedes that *he* made "the very practical suggestion . . . to try all Bell's claims in one forum at one time." R. 7 at 13; *see* R. 7 at 12 ("All Ruben did was suggest that the claims—all of which were derived from the same core of operative fact[s]—be tried together, at the same time, in the same forum."). That may have been advantageous, as Ruben says he did so "for the purpose of judicial economy and efficiency," R. 7 at 13, but he cannot now argue that he did not voluntarily chose to defend the claims in Arbitration *after* his discharge petition. Had Ruben not chosen to pursue such a course of action, he would not have been subject to or liable for any of the fees resulting from the Arbitration. *See Clarkson,* 377 B.R. at 288 ("[T]he issue in this case is whether Debtors took sufficient affirmative action post-petition . . . that warrants imposing personal liability for the post-petition fees and costs awarded."). This is similar to the debtors in *Clarkson* who "could have elected not to fund the litigation post-petition and be free of any liability stemming from it." 377 B.R. at 288-89.

The Court is careful to note that Ruben did not necessarily "pursue a new course of litigation" after the bankruptcy case commenced, as Bell contends. R. 2 at 5. The underlying claims were already in existence. However, Ruben voluntarily chose to pursue a different litigation venue, presumably because he preferred it over the bankruptcy courts. He did this knowing full well that the Arbitration was not

21

free. Thus, it is perfectly equitable and within the spirit of the Bankruptcy Code for Ruben to pay for the course of action he chose to pursue. *See Hadden*, 57 B.R. at 190 ("If the debtor chooses to enjoy his fresh start by pursuing pre-petition claims which have been exempted, he must do so at the risk of incurring the post-petition costs involved in his acts.").

The bankruptcy court attempted to distinguish these cases on the ground that they "involved a debtor who voluntarily pursued a claim post-petition against someone else," while "[h]ere, we have the opposite situation, a pre-petition creditor pursuing the debtor." R. 2-3 at 25. However, the underlying theme in these cases is not necessarily how the ball initially got rolling, but rather, what party voluntarily chose the course of action leading to the post-discharge obligation. *See Hadden*, 57 B.R. at 190 (explaining that bankruptcy was not intended to "insulate the debtor from the costs of post-bankruptcy acts"). The focus is on why and how the debtor incurred the post-petition debt. Here, Bell pursued her claims in the bankruptcy court; Ruben voluntarily chose to throw his hat in the Arbitration ring with his former law firm and partners *after* the discharge order. Thus, the obligation at issue here accrued because of a superseding cause—i.e., Ruben's decision to pursue Arbitration—not because of Bell's original claims.

Ruben, like the bankruptcy court, relies on *Gullone*, 301 B.R. at 687; *Matthews*, 458 B.R. at 626; and *Kirkpatrick*, 216 B.R. at 665-66; to support his

argument that the Award is a pre-petition obligation. *See* R. 2-3 at 22-23.[9] But those cases are easily distinguished. First, the result in *Gullone* was dictated by a Third Circuit case, *In re M. Frenville Co.*, 744 F.2d 332 (3d Cir. 1984), which the court noted could not be reconciled with the *Hadden* result, whose reasoning it described as "sound." 301 B.R. at 688. Conversely, *Hadden* is a case from within this circuit, and, as discussed above, has similar facts and considerations that are relevant here.

Next, in *Matthews*, the debtor owned 80% of the company-plaintiff that initiated a patent infringement suit against the creditor prior to the debtor's Chapter 7 petition. 458 B.R. at 624-25. After the debtor's petition was granted, the pending patent infringement suit was dismissed, with attorney fees awarded to the creditor. *Id.* The creditor only sought to recover the attorney fees incurred post-petition and, thus, argued that its attempt to recover the fees from the debtor did not implicate the automatic stay in the debtor's bankruptcy case. *Id.* at 625. The bankruptcy court disagreed with the creditor because a debtor must make "affirmative actions" after a discharge petition aside from continuing litigation that began pre-petition, and that did not occur in the case. *Id.* at 625-26. Additionally, the debtor was not a party to the patent case, nor was the company-plaintiff a debtor. These two central points are exactly what distinguishes *Matthews* from the

---

[9] The Court has also considered the unpublished case Ruben provided, *In re Doorn*, Case No. 399-36294-elp13 (Bankr. D. Ore May 29, 2001), *available at* www.orb.uscourts.gov/Judges/.../399-36294-elp13_260408_145605.pdf. Although not binding on this Court, that case is nevertheless distinguishable on the ground that the *creditor* in *Doorn* moved to compel arbitration of the claims against the debtors *before* the debtors filed their Chapter 13 petition. Here, it was Ruben who sought refuge in the Arbitration after his discharge petition.

case at hand: (1) Ruben made the affirmative decision to defend his case in the Arbitration; the debtor in *Matthews* took no substantive affirmative actions regarding the pending lawsuit; and (2) Ruben was a party to the case in which the Award was imposed.

Finally, in *Kirkpatrick*, the debtor filed suit against the defendant-creditors seeking injunctive relief. 216 B.R. at 663-64. While that case was pending, the debtor filed for Chapter 7 petition for relief, which the bankruptcy court granted. *Id.* at 664. The underlying suit was dismissed a few months later, and the creditors were awarded attorney fees incurred in defending the debtor's suit. *Id.* at 664-65. The debtor then sought protection from the award of fees through his earlier discharge petition; the creditors opposed it. *Id.* at 665.

The *Kirkpatrick* court held that the claim was pre-petition because it was "evident that but for the [d]ebtor filing the suit, which happened to be pre-petition, no attorney's fees would have been made." *Id.* at 665-66. The same is true in this case; technically the Award would not have been imposed had Bell never brought her claim. In *Kirkpatrick*, however, the "awards for the attorney's fees were awarded pursuant to 42 U.S.C. § 1983 and authorized by 42 U.S.C. § 1988, the Civil Rights Attorney's Fees Awards Act of 1976." *Id.* at 665. They were an inherent aspect of the Section 1983 claim. Here, the Award did not arise from the filing of Bell's Adversary Complaint against Ruben. As explained, it arose from Ruben's additional post-discharge attempt to secure a spot in the Arbitration. Simply put, Ruben engaged in affirmative conduct post-petition leading to the debt; the debtor

in *Kirkpatrick* did not.

The Court is cognizant of the fact this is a unique case, and had the Panel awarded damages to Bell based on any of the counts in the Adversary Complaint, those damages would have been based on pre-petition conduct and dischargeable under the Section 727(b) umbrella.[10] But that is not what occurred; the Award was not tied to any of Bell's claims. Accordingly, like the *Hadden* case, Ruben's voluntary choice to defend the claims in the Arbitration constitutes sufficient affirmative conduct post-discharge to warrant personal liability for the Award imposed. The Award is, therefore, not within the confines of Section 727(b), and the bankruptcy court incorrectly interpreted the Award as being discharged pursuant to the September 11, 2010 discharge order. Summary judgment in favor of Ruben on Count IV is reversed.

### B. Summary Judgment

The next issue is whether the Court should grant summary judgment in favor of Bell. The Court believes so. Nothing about the facts alleged in Count IV that may arguably be in dispute is material to the Court's conclusion here—be it whether the Award recognized Bell as the "prevailing party," or what Ruben's particular reason was for joining the Arbitration. The Court has determined that the Award is related to Ruben's post-petition, post-discharge affirmative conduct, and Ruben has not demonstrated a genuine issue of material fact as to why Bell cannot collect the

---

[10] The Court notes for clarity that any damage award based on fraud or intentional conduct would be exempt from the discharge order pursuant to 11 U.S.C. § 523.

Award in light of that determination. As such, the Court grants summary judgment in favor of Bell on Count IV of her Amended Complaint.

## CONCLUSION

For the reasons discussed, the Court affirms the bankruptcy court's grant of summary judgment in favor of Ruben on Counts I, II, and III. The Court reverses the grant of summary judgment in favor of Ruben on Count IV and, instead, grants summary judgment on Count IV in favor of Bell. Judgment is entered against Ruben in the amount of $171,504.54, plus interest, as discussed in the Panel's March 5, 2012 award. *See* R. 2-1.

ENTERED:

Thomas M. Durkin

Honorable Thomas M. Durkin
United States District Judge

Dated:  November 26, 2013